E. T., VA. & GA. R. R. CO. *v.* JACOB STAUB.

7L 397
116 682

1. FRAUD. *Statute of.* A contract is not within the provisions of the Code, sec. 1758, sub-sec. 5, merely because it may continue longer than one year from its date—as, for instance, a contract to continue during the time the plaintiff may remain disabled on account of certain existing injuries.

2. PLEADING. *Contract. Breach of.* The same certainty is not required in assigning breach of contract as in setting forth its terms. A substantial averment of breach is sufficient.

3. CONTRACT. *Breach.* In an action upon a contract of employment, in which the plaintiff avers he has been wrongfully dismissed, allegation or proof of a formal dismissal is not necessary; a denial and repudiation of the obligation of the contract is sufficient.

4. SAME. In such cases the plaintiff may recover full damages for the entire breach, and cannot bring separate suits for the wages that would have fallen due had the contract continued.

5. DAMAGES. *Rule.* In such case the rule of damages is what would have come to the plaintiff had the contract continued, less whatever he might earn in other employment by reasonable diligence, and may be computed in reference to events to happen after action brought. The difficulty of ascertaining the damages by reason of the uncertain and contingent events upon which they depend, as the duration of the plaintiff's life, is no objection to the action.

FROM KNOX.

Appeal in error from the Circuit Court of Knox county. S. A. RODGERS, J.

J. T. & J. K. SHIELDS and GEORGE BROWN for Railroad.

L. A. GRATZ and HOUK & GIBSON for Staub.

MCFARLAND, J., delivered the opinion of the court.

Staub, the plaintiff below, obtained a verdict and judgment for $9,400. A new trial was refused, and the defendant excepted and appealed in error.

It is conceded that the recovery was upon the first and fourth counts in the declaration, which state the cause of action substantially as follows, to-wit: That the plaintiff was in the employ of the company as a locomotive engineer, and in December, 1874, while in the discharge of his duties, received serious injuries in a collision between his engine and another train, by reason of the defendant's negligence; that within twelve months—the period limited for bringing such actions— he commenced his action to recover damages for the injuries; that, subsequently, an agreement, by way of compromise, was entered into, by which, in considera-

tion of the plaintiff's agreeing to dismiss his suit, the defendant agreed to pay the costs and the plaintiff's attorney's fees and physician's bills, and furthermore agreed to retain the plaintiff in the company's employ, he, the plaintiff, laboring when in his own opinion he was able to do so, and performing only such services as, in his disabled condition, he might be able to perform, and the company agreed to pay the plaintiff a certain specified sum per day—the regular wages paid to machinists—whether the plaintiff labored or not. This contract was to continue so long as the plaintiff's disability, by reason of the injury referred to, should continue. The recovery was for an alleged breach of this contract.

The first ground of error assigned for a reversal is the refusal of the circuit judge to hold the above contract void, under the statute of frauds, except only for the period of twelve months from its date. The statute provides: "That no action shall be brought * * upon any agreement or contract which is not to be performed within the space of one year from the making thereof": Code, sec. 1758, sub-sec. 5. Whatever might be our understanding from the reading of this statute, were its construction an open question, it is clear that the authorities fully sustain the holding of the court below. According to the construction that has been given to this statute, a contract is not within its term simply because it may continue longer than one year—as, for instance, a promise to pay a certain sum during the promisee's life. This may be fully performed within a year,

because the party, where life is involved, may die within that period. The statute "only extends to contracts * * in which, by express appointment or understanding of the parties, the thing *is not to be performed within a year*": *Leinau* v. *Smart,* 11 Hum., 308; *Deaton* v. *Tennessee Coal and Railroad Company,* 12 Heis., 650; Brown on Statute of Frauds, sec. 273 *et seq.* Although the contract in this case was one that might continue longer than one year, yet, according to the understanding of the parties, it was to be performed at once and might be fully completed within one year, as by its terms it was to terminate whenever the plaintiff's disabilities by reason of the injuries received, should cease, and it would of course terminate at the plaintiff's death, either of which events might occur within one year. The first event within the year was no doubt contemplated.

It is next argued, that, in any event, the plaintiff could only recover for the wages that had accrued by the terms of the contract and which remained unpaid at the commencement of the action, and this for several reasons. First, because the breach of the contract assigned in the declaration shows that the action was only brought for such wages; that the declaration does not aver a total breach and repudiation of the contract, but only a failure to pay the wages due. The declaration avers that the plaintiff had performed, and offered to perform all of his undertakings in the premises, and that the defendant wholly failed and refused to discharge and comply with its part of the obligations by paying the plaintiff the wages agreed

upon, his physician's bills, expenses, etc.    The objection is, that the declaration does not in  terms aver that the defendant refused to permit the plaintiff to work under the contract, or that the plaintiff was discharged, or anything equivalent to a total repudiation of the contract by the defendant.

The same certainty is not required in assigning ·the breach that is required in setting forth the contract. "All that can be required is that the breach complained of be substantially set forth and substantially proved": *Michie* v. *The Governor*, 4 Hum., 486.    This is especially so upon a contract like this.    It would be different in acting upon contracts of a different character—as, for instance, upon a lease containing separate covenants; there a breach of each covenant for which a recovery is claimed should be assigned: *Eastham* v. *Crowder*, 10 Hum., 194.    The breach assigned here is the failure and refusal of the defendant to pay the several sums agreed to be paid.    This was the whole of the defendant's part of the obligation—all it promised to perform.    The declaration was either intended to be for the wages due for the time that had elapsed, or it was intended to recover damages for the entire breach.    Looking to the entire statements of the counts in question, we think they may well be construed—as they were by the judge below—as intended to · recover for the total breach and repudiation of the contract by the defendant.    And this, even conceding for the argument that, in a case where the defendant repudiates the contract and the plaintiff has ceased to render the service, the latter

may nevertheless, at his election, sue to recover full damages for the breach, or sue from time to time to recover wages as the same would become due by the terms of the contract—a question, however, hereafter to be considered. The counts in question show with reasonable certainty that both parties were not treating the contract as in force, the defendant simply omitting to make payments; but while the plaintiff was offering to perform his part of the agreement, the defendant had repudiated it. The cause was tried upon this theory, and we do not see that the defendant was surprised or misled in this respect.

Second, it is insisted that the charge of the judge below was erroneous in that the jury were in effect instructed that a mere failure and refusal to pay the sums agreed to be paid might be regarded as sufficient to authorize a finding that the defendant had in effect repudiated the entire contract and dismissed the plaintiff from its service. And further, it is insisted that the plaintiff's own testimony does not in fact show such a breach or repudiation of the contract by the defendant as would authorize a recovery for full damages, but at most only a recovery for the wages unpaid. The plaintiff's testimony shows that for a time after the compromise he continued at intervals to perform light labor for the company when able to do so, receiving pay, however, only for the time he actually worked. After a time he complained to the vice-president and superintendent, and several unsatisfactory interviews were had between them, and in the final interview he was told by said officer that "he

might go on to work or not as he chose," and upon the termination of this interview he ceased to work or offer his services, and brought this action.

It is argued that the plaintiff was not discharged; that his failure to continue in the company's employ was his own fault, and there was no breach of the contract by the defendant. But it further appears, that, in the interviews referred to, the superintendent totally denied the company's liability for the physician's bill and all obligations to the plaintiff except to pay him for the work he might afterwards perform, as the company would pay any other employe. The language of the superintendent, as proven by the plaintiff, being, in substance, that he regarded himself under no more obligations to the plaintiff than to any one else. In short, the superintendent totally repudiated the plaintiff's version of the contract, and in fact the company has ever since continued to do so. It is in view of this state of facts that it is insisted, on behalf of the defendant, that the jury should have been instructed that before they could find a total breach of the contract, the proof should show that the officers of the company refused to allow the plaintiff to work and dismissed him from its service, for this is in effect the position assumed. We hold the position untenable. No precise form of words was necessary on the part of the defendant's superintendent to reject plaintiff's services. The obligation of the contract being created, a denial of its existence was equivalent to a refusal to allow the plaintiff to continue the service under it: *Howard* v. *Darby* (61 N.

Y), 19 Am. Rep., 288. The charge, as applied to the facts, is not erroneous, and the proof of the total repudiation of the contract by the defendant is sufficient.

It is again earnestly argued, that, in any view of the pleadings and proof, the plaintiff's only right of recovery was for the wages due under the contract. That there is no rule of damages under which the plaintiff can recover what it might be supposed he would have received had the contract not been broken, as this involves an inquiry into the probable length of the plaintiff's life, the probable duration of his disability by reason of the injuries received, the question whether he might be able to obtain other employment and how much he might thus realize—facts which, it is insisted, cannot be ascertained except by mere conjecture.

As already intimated, in a case of this character, where it is claimed that the defendant has repudiated the contract, the authorities seem to be in conflict as to whether the plaintiff may at his election, notwithstanding the contract is terminated by the defendant, sue from time to time for the wages that by the terms of the contract would become due. Recent authorities tend to a different conclusion, maintaining the doctrine that in such cases the plaintiff's only remedy is to sue for the entire damages, recovering, of course, for past wages and damages to the extent of the benefit the plaintiff would probably realize under the contract. This in general would be the contract price for the entire term, less whatever it be shown the

plaintiff could have realized for services elsewhere. On this question see the case of *Howard* v. *Darly* (61 N. Y.), 19 Am. Rep., 285; and our own case of *Tarbox* v. *Hartenstein*, 4 Baxt., 78, holds that the remedy in such case is to recover full damages in one suit. In that case it appeared that Hartenstein was employed by Tarbox & Bro. as a watchmaker to work in their shop for the balance of the year 1870, at $25 per week. On the 1st of October Hartenstein was discharged, as he alleged, without cause. After the expiration of a week he brought suit for the breach of the contract, and recovered $25, which was paid. Soon after, another suit was brought, and then a third, the purpose being to sue for each week's wages for the balance of the year. These last named suits were perpetually enjoined by this court upon a bill filed for the purpose by Tarbox & Bro., Judge Freeman saying: "There was but one breach, and the recovery in the first suit was an adjudication and recovery for such breach, and precluded defendant from another recovery for the same cause of action." This case seems to settle the question in such cases against the right to bring successive suits for wages supposed to accrue after a total breach and abandonment of the contract. It is sufficient, however, for the present case to say that, if it even be conceded that the plaintiff might elect to bring such suits, no doubt can exist as to his right to sue for the entire breach and recover full damages; he not only *can* recover full damages, but the case last above referred to holds that one recovery must be in full.

It is a mistake to suppose, as has been done in argument, that because, in estimating the damages, we look to the probable course of events after the suit is brought, we are therefore allowing damages that accrue after the action is brought. The right to recover damages *accrues upon the breach of the contract*. But the rule of damages in such cases is what would have come to the plaintiff under the contract had it continued, less whatever the plaintiff might earn by the exercise of reasonable and proper diligence on his part (see 1 Sedgw. on Meas. of Dam., 202, note *a*, and *ibid.*, 200, foot note); and, of course, in ascertaining this, we must look to a time subsequent to the breach, and in some cases to a time subsequent to the bringing of the suit. Nor is it any objection to the recovery that in this case the damages are difficult to ascertain, depending upon contingent and uncertain events. There are many cases in which the damages are uncertain and difficult to ascertain, and in fact cannot be ascertained with certainty, but this has never been regarded as a sufficient reason for denying all relief. Courts are incapable of administering justice with mathematical accuracy, it is at best only approximate: 1 Sedgw. on Meas. Dam., 480, note *b*.

It is next argued that there should be a new trial because the verdict is not sufficiently sustained under the rule applying in this court. The plaintiff's theory of the contract is supported by his own direct and positive testimony, and also by the positive testimony of another witness who was present, supported by still

Railroad Company *v.* Staub.

another whose testimony, however, is not so full and positive. Under the rule that applies in this court, it matters not that there were a larger number of witnesses on the other side; it was but a conflict of testimony, to be settled by the jury.

It is argued that the contract was such as no reasonable man would have made, as it was virtually granting to the plaintiff a settlement for life at the rate of three dollars per day. But it is apparent that at the time the contract was made, it was contemplated on all hands that the plaintiff would soon recover. Even his own attorney and friend did not suspect that his injuries were permanent. If, on the other hand, it were then thought his injuries were permanent, it would not have been unreasonable for the company to make the agreement alleged, if it was probably liable for the injuries in the action then pending. The compromise of such a suit, the result of which was then uncertain, was a good consideration for the undertaking.

It is finally insisted that the damages are so excessive as to indicate intemperance or prejudice upon the part of the jury. The proof shows, in a manner far more satisfactory than usual in such cases, that while the plaintiff's injuries at the time of the compromise were not thought to be permanent, it has resulted otherwise. Physicians fully explained the nature of the injuries, showing the loss of part of the bones of the spinal column, reducing the plaintiff's height three inches, rendering him "humpbacked," and compressing the heart and lungs in such manner as

to require his body to be supported by artificial means. They show that he is able to perform but very little labor, and that he can probably never recover. Yet he is comparatively a young man, and may live an ordinary lifetime. He was formerly of vigorous health. Upon these facts, we cannot say that the damages are so excessive as to authorize a reversal.

Upon the whole we find no error in the record, and the judgment will be affirmed.