S. L. IRWIN *v.* CLEO DAWSON.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

HENRY K. WILLIAMS, JR., of Knoxville, for appellant.

GRIMM, TAPP & CARSON, of Knoxville, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The Chancellor sustained the demurrer to the bill and dismissed the suit.

The complainant, Irwin, filed his bill seeking specific performance of a certain lease to a vacant lot on which there had been erected a commercial building, which lease had been signed by the husband Dawson but not signed by the wife, Cleo Dawson.

It appears that Dawson and his wife, Cleo Dawson, owned the property in question as tenants by the entirety, this property consisting of a residence and a vacant lot adjoining it in the City of Knoxville.

In 1946 complainant Irwin, and the husband Dawson entered into a written contract by the terms of which there was to be built a building on this vacant lot with certain rentals to be paid over a period of ten years, payable monthly, with the privilege on the part of complainant Irwin to renew for an additional ten years. The work on the new building was to be generally supervised by Irwin, and he was to be allowed certain credits on his rent for his services.

It appears that a written lease was prepared and Irwin went to the home of the Dawsons, and the bill charges that while Mrs. Dawson, the defendant, did not sign the lease that she knew of its contents and import. Following this complainant went into possession of the rented property using the premises and paying the monthly rent. After the building had been erected, Dawson and his wife went with him to a loan company, and he and his wife executed a trust deed and note to secure a loan on the new building and lot, said loan being used for the payment of the new building.

Dawson died in 1953, and the defendant Cleo Dawson, the surviving widow, refused to recognize this contract and thereupon the bill in question was filed.

The defendant Cleo Dawson filed a demurrer to the bill pleading the Statute of Frauds, Code Section 7831, and also the Statute of Limitations of six years, Code Section 8600.

After a hearing on the bill and the demurrer the Chancellor sustained the demurrer.

In our view of the case it is not necessary to discuss the question as to the Statute of Limitations of six years, as we are of the opinion that the case comes within the inhibitions of the Statute of Frauds.

It is well settled in this State that a husband

cannot dispose of his wife's interest in an estate owned as by the tenants by the entirety, and cannot sell or encumber anything but his interest. *Alfred* v. *Bankers' & Shippers' Ins. Co.*, 167 Tenn. 278, 282-283, 68 S. W. (2d) 941.

Since the passage of the Married Women's Emancipation Act, Code Section 8460 it cannot be said that the husband is the dominating personality in the tenancy.

█ To make the contract of sale good and valid it must have been signed by all of the owners by themselves, or some one lawfully authorized to sign their names for them, not by one of them alone.

█ In the present case there appears no legal authority on the part of the husband to sign his wife's name to the lease in question.

It does not appear that the defendant ever signed the lease in question, nor was she in any way mentioned in the contract.

It also appears that the complainant Irwin had full access to the registration books, where the title to the real estate in question was shown to have been held by the Dawsons as tenants by the entirety.

We therefore find that there is no estoppel on the part of the defendant Cleo Dawson in her conduct with reference to this lease. She was not required to sign it nor does it appear that she knew that she and her husband held the property as tenants by the entirety.

The doctrine of estoppel springs from the equities in the case, and we find no conduct on the part of the defendant Cleo Dawson, where she has perpetrated a fraud or misled the complainant by her words or conduct. The Statute of Frauds, so long the law of this State, was adopted and enacted in Tennessee for the protection of people, who owned the title to real estate.

On the other hand the complainant Irwin was charged with constructive notice of the deed which was registered in the Register's Office long before the execution of the lease in question.

In 19 Am. Jur. pp. 741-742 it is said:

"Good faith is generally regarded, however, as requiring the exercise of reasonable diligence to learn the truth, and, accordingly, estoppel is denied where the party claiming it was put on inquiry as to the truth and had available means for ascertaining it, at least where the element of actual fraud is absent. Ordinarily, the courts refuse to give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them. A distinction is sometimes made as to the duty of exercising diligence to learn the truth between cases where the claim of estoppel is based on mere silence or inaction and those where it is based on affirmative representation of conduct, the view being taken that the availability of a means of knowing the true state of facts, as by reference to the public records, bars a claim of estoppel in cases of the former class, but not in those of the latter class."

"It is essential to estoppel that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of obtaining such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth." *Hankins* v. *Waddell,* 26 Tenn. App. 71-77, 167 S. W. (2d) 694, 696; *W. C. Early Co.* v. *Williams,* 135 Tenn. 249, 186 S. W. 102, L.R.A. 1916F, 418; *Crabtree* v. *Bank of Winchester,* 108 Tenn. 483, 490-493, 67 S. W. 797.

It has also been held that those who proceed in acquiring the land or an interest therein without ordinary care are not entitled to the benefit of an estoppel. *Frankfort Land Co.* v. *Hughett,* 137 Tenn. 32(8), 191 S. W. 530.

In 41 C. J. S., Husband and Wife, Section 216c, p. 708, it is said:

"The general rule is that a married woman is not estopped by her mere silence, and this is especially true where her silence was not fraudulent. * * *

"The presumption of constructive fraud from silence or acquiescence will not, however, be strictly applied to a married woman in reference to the dealings of her husband with her property." See also *Webb* v. *Shultz,* 184 Tenn. 235, 198 S. W. (2d) 333.

In the last cited case it was said at page 241 of 184 Tenn., at page 336 of 198 S. W. (2d):

"The rule that the partial performance of a parol contract will not relieve from the application of the statute has become a rule of property. *Goodloe* v. *Goodloe,* 116 Tenn. 252, 92 S. W. 767, 6 L. R. A., N. S., 703, 8 Ann. Cas. 112.

"In *Inman* v. *Tucker,* 138 Tenn. 512, 198 S.W. 247, it was held that where one goes into possession under a parol donation, he occupies the same relation in respect to his possession as a purchaser by parol.

"In *Jennings* v. *Bishop,* 3 Shan. Cas. 138, it was held that partial performance of a parol contract for the sale of land will not take the case out of the statute, and, therefore, neither the taking of possession of land by the parol vendee and permanently improving it, nor the payment of purchase money, will prevent the vendee from electing to avoid the contract."

We are therefore of the opinion that the defense of the Statute of Frauds was good, and that the defendant, Cleo Dawson, is not estopped from repudiating the contract by her conduct, words or silence in the transaction.

It results that we find no error in the decree of the Chancellor in dismissing the bill and it is affirmed.